UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESSE R. BENTON<br><br>           **Defendant.** | Case No. 1:21-cr-00569-TNM |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE RULE 404(b) AND RULE 609 EVIDENCE**

During the time period that Defendant Jesse R. Benton ("Defendant") committed the charged offenses, he was sentenced for his conduct on his previous campaign finance conviction, and engaged in conduct similar to the presently charged conduct with an undercover reporter for the Telegraph newspaper, resulting in a published article.[1]  *See* Ex. A (Telegraph Article).  The government provided timely notice of its intent to use this other conduct at trial under Federal Rule of Evidence 404(b) and Rule 609.  Specifically as laid out in its motions *in limine* and below, the United States seeks to introduce (1) Defendant's previous conviction and the facts underlying that conviction to establish the required state of mind for the charged crimes as well as for other proper purposes including to show intent, knowledge, lack of mistake or accident, and modus operandi; (2) to be allowed to cross examine Defendant and defense witness David Warrington[2] regarding the conduct described in the Telegraph article; and (3) to be allowed to impeach Defendant with

---

[1]  The United States laid out the facts of the Telegraph article in detail in its motions *in limine*. *See* Doc. 32.  The article is also attached hereto as Exhibit A.

[2]  Defendant has provided notice that he intends to call Mr. Warrington as a witness to establish an advice of counsel defense to the present charges.

his prior felony conviction under Federal Rule of Evidence 609 should he take the stand.[3] Because all of this evidence is relevant and admissible the Court should deny Defendant's motion.[4]

### I. The Court Should Allow the Government to Impeach Defendant with his Prior Conviction under Federal Rule of Evidence 609.

Although Defendant moves to preclude the government from using his prior conviction to impeach him under Federal Rule of Evidence 609, based on the fact that the conviction was pardoned, his brief is devoid of case law regarding the issue, and he makes no attempt to establish the requisite predicates under Federal Rule of Evidence 609(c). *See* ECF No. 35, at 7-8. As laid out in the government's motions *in limine*, under Federal Rule of Evidence 609(c), evidence of a conviction that has been pardoned is only inadmissible where the pardon was based on a finding that the person has been rehabilitated or the pardon was based on a finding of innocence. The plain language of Defendant's pardon does not indicate that the pardon was based on either a finding of actual innocence or rehabilitation. *See Zinman v. Black & Decker*, 983 F.2d 431, 435 (2d Cir. 1993) ("We have construed Rule 609(c)(1) strictly, interpreting it to bar admission of a prior conviction only when there has been an express finding that the person convicted has been rehabilitated."); *Watkins v. Thomas*, 623 F.2d 387, 387 (5th Cir. 1980) (allowing impeachment by

---

[3] The United States also provided notice under Federal Rule of Evidence 404(b) regarding Defendant's attempts to solicit a "confidential" $300,000 donation during the 2016 presidential primaries for a separate presidential campaign. *See* ECF No. 35, at Ex. 1. These text messages are part of a separate scheme, which purported to use a 501(c)(4) organization to hide donor funds to that separate presidential campaign. Although the United States gave notice of those text messages out of an abundance of caution, the United States does not intend to introduce those text messages affirmatively at trial, and would only use them on cross-examination of Defendant if Defendant testified on direct examination in a way that directly contradicted their contents. The government therefore respectfully submits that this part of Defendant's motion is moot.

[4] Although styled as an "Opposition to the Government's Rule 404(b) Notice" the United States is construing ECF No. 35 as a Motion to Preclude Evidence.

pardoned convictions where defendant's pardons "were not the consequence of subsequent proof of innocence" but rather defendant was pardoned "because he performed undercover activities in the service of the Federal Bureau of Narcotics and Dangerous Drugs."). The explanation for the pardon provided by the White House similarly does not indicate that the pardon was based on either a finding of actual innocence or rehabilitation. *See* Ex. F (Statement from the Press Secretary Regarding Executive Grants of Clemency). Moreover, while pardons mitigate the offender's punishment, "the granting of a pardon is in no sense an overturning of a judgment[.]" *Nixon v. United States*, 506 U.S. 224, 232 (1993). Courts have made clear that a pardon "does not 'blot out guilt' in any literal or uncritical sense[.]" *Richards v. United States*, 192 F.2d 602, 607 (D.C. Cir. 1951) (citation omitted); *see also Bjerkan v. United States*, 529 F.2d 125, 128 n.2 (7th Cir. 1975). As such, and for the reasons laid out in the government's motions *in limine*, the Court should deny Defendant's motion and permit the government to impeach Defendant with his prior conviction under Federal Rule of Evidence 609 should he take the stand.

## II. The Court Should Allow the Government to Use Evidence Under Federal Rule of Evidence 404(b).

There are two categories of evidence under Federal Rule of Evidence 404(b) that the government intends to use at trial. First, the government intends to affirmatively introduce evidence of Defendant's prior conviction and the facts underlying that conviction in its case in chief under Federal Rule of Evidence 404(b) to establish willfulness, knowledge, intent, lack of mistake or accident and modus operandi. Second, the government wishes to use Defendant's conduct as described in the Telegraph article, *see* Ex. A, and as corroborated by records found in Defendant's email account, *for cross-examination purposes only*. Both are admissible and should be allowed by the Court.

**a. Defendant's Prior Conviction Is Admissible Under Federal Rule of Evidence 404(b).**

In 2016, Defendant was convicted of campaign finance related criminal activity under FECA, including under 18 U.S.C. § 1519, one of the same crimes charged in the present Indictment. In order to establish certain of the charged offenses, namely Count 2, charging 52 U.S.C. § 30121 (electoral contributions by foreign nationals); and Count 3, charging 52 U.S.C. § 30122 (electoral contributions in the name of another), the government must prove willfulness, i.e., "that the defendant acted with knowledge that his conduct was unlawful." *United States v. Singh*, 979 F.3d 697, 712 (9th Cir. 2020) (using the standard for willfulness set out in Bryan v. United States, 524 U.S. 184, 191-95 (1998)). For the other offenses, the government must prove that Defendant acted knowingly. The fact that Defendant was previously prosecuted and convicted of 18 U.S.C. § 1519 and campaign finance crimes is directly relevant to his knowledge that his conduct in the instant case was unlawful. Rule 404(b) permits the use of other-acts evidence to prove, among other things, motive, opportunity, intent, and *knowledge*. *United States v. Bowie*, 232 F.3d 923, 929-30 (D.C. Cir. 2000) (emphasis added). Thus, "[a] proper analysis under Rule 404(b) begins with the question of relevance: is the other crime or act relevant . . . to something other than the defendant's character or propensity? If yes, the evidence is admissible unless excluded under other rules of evidence such as rule 403." *Id.* at 930; *see also United States v. Washington*, 969 F.2d 1073, 1080-81 (D.C. Cir. 1992) (setting forth the test for admissibility under Rule 404(b)). Once the Court determines that Rule 404(b) evidence is relevant, "the Court should exclude the evidence only if its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Holland*, 41 F. Supp. 3d 82, 90 (D.D.C. 2014). Because Defendant's prior conviction is directly relevant to an element the government must prove at trial, it is admissible for this non-propensity purpose.

The underlying facts of the prior case are similar to the violations alleged in the Indictment here. In the present case the government alleges that Defendant created a false invoice for "consulting services" for the Russian foreign national, to hide the true reason for the transfer of funds by the Russian foreign national to Benton, namely that the funds would be used for a political contribution. Indictment, ¶ 40. In his prior criminal case, the co-conspirators similarly created an elaborate scheme to hide the true purposes of payments (there, to a state senator in exchange for his endorsement) that involved the state senator sending false invoices for "consulting services." *See United States v. Benton*, 890 F.3d 697, 706 (8th Cir. 2018).[5] In both instances, the scheme led to false FEC reporting – in the prior case of campaign expenditures, and in the present case of the true identity of the contributor. Defendant was charged with conspiracy, in violation of 18 U.S.C. § 371; causing false records, in violation of 18 U.S.C. §§ 1519 and 2; causing false campaign expenditure reports, in violation of 52 U.S.C. §§ 30104(a)(1), 30104(b)(5)(A), 30109(d)(1)(A)(i) and 18 U.S.C. § 2; and with a false statements scheme, in violation of 18 U.S.C. §§ 1001(a)(1) and 2 in the prior case in a superseding Indictment returned on November 19, 2015, well before the time of the alleged offense in this case. Similarly here, Defendant is charged with violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1519, and other campaign finance offenses. Defendant's prior case thus directly establishes his knowledge of the legal prohibitions at issue in this case, as well as his knowledge of campaign finance laws more generally which goes directly to his willfulness and knowledge.

---

[5]     As discussed in greater detail below, in October 2016, Defendant created yet another false invoice for "consulting services," this time for the undercover reporter from the Telegraph to conceal the true purpose of any transfer of funds by an individual Defendant believed was a Chinese donor who wanted to give money to Great America PAC.

Moreover, the facts of Defendant's prior case are admissible to establish Defendant's knowledge, intent, lack of mistake or accident, and modus operandi, that includes the use of false invoices, and specifically false invoices for "consulting services" to disguise and conceal the purpose of funds to evade campaign finance laws. The fact that Defendant engaged in a substantially similar scheme on a prior occasion makes it more likely that Defendant acted intentionally and with knowledge that his conduct was unlawful, and less likely that Defendant's conduct was the result of a mistake or accident. The D.C. Circuit has recognized that the fact that a defendant engaged in similar conduct on a prior occasion can be highly relevant and admissible under Rule 404(b). *See, e.g., United States v. McCarson,* 527 F.3d 170, 173-74 (D.C. Cir. 2008) (finding two prior possession with intent to distribute convictions and two firearm convictions were admissible under Rule 404(b) because they were probative of defendant's intent for the similar charges for which defendant was charged); *United States v. Pettiford*, 517 F.3d 584, 588 (D.C. Cir. 2008) (finding that district court properly admitted evidence of defendant's prior conviction as Rule 404(b) evidence as it showed in the instant case that defendant "knowingly and/or intentionally" committed the new charged offenses); *United States v. Burch*, 156 F.3d 1315, 1324 (D.C. Cir. 1998) (finding evidence of prior conviction went to defendant's knowledge and intent and was thus permissible under Rule 404(b)); *Washington*, 969 F.2d at 1080-81 (finding Rule 404(b) evidence of defendant's prior charges were offered to show more than defendant's character because they were probative of intent, knowledge, plan, and absence of mistake).

Defendant incorrectly asserts that the introduction of the facts from his prior case will lead to a mini-trial regarding the prior offense. *See* ECF No. 35, at 4. Defendant offers no case law to support his assertion that he is entitled to relitigate a prior conviction that was affirmed by the Eighth Circuit. Indeed, as the Supreme Court has recognized, a pardon "carries an imputation of

guilt; acceptance a confession of it." *Burdick v. United States*, 236 U.S. 79, 94 (1915). Defendant was not only convicted of the prior offense, but he accepted a pardon for that offense that was not based on innocence. He therefore cannot then turn around and claim he never committed the offense or relitigate his guilt. *See Burdick*, 236 U.S. at 94. Moreover, "a pardon cannot erase a judgment of conviction, or its underlying legal and factual findings." *United States v. Flynn*, 507 F. Supp. 3d 116, 136 (D.D.C. 2020) (citation omitted). A jury and the Eighth Circuit have made legal and factual findings that Defendant's pardon does not erase or change. Defendant is not entitled to relitigate his prior offense, and the Court should not allow him to do so. In addition, the evidence of Defendant's prior case would be relevant to his willfulness in any event, since the mere fact that he was charged with and convicted of similar offenses in the prior case establishes his knowledge that the conduct at issue in the present case was unlawful.

Finally, the probative value of Defendant's prior conviction, and the facts underlying that conviction, are not substantially outweighed by unfair prejudice. *See United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) (finding prior conviction was properly admitted where there was no "compelling or unique evidence of prejudice[.]"). "[U]nfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair." *Dollar v. Long Mfg., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) (internal quotations omitted) (cited approvingly by *Cassell*, 292 F.3d at 796). The probative value of the evidence the government wishes to introduce is high: the conviction goes directly to elements that the government must prove – willfulness and knowledge. Moreover, the facts of the prior case, including the use of fake invoices for consulting services, are very similar to what happened here and establish that Defendant appears to have a modus operandi for his criminal activity, and suggests lack of mistake or accident. Thus, the

7

"similarity of the transactions and the small amount of time separating the events suggest that the prior act is highly probative." *Washington*, 969 F.2d at 1081. The balance of the Rule 403 factors therefore weighs towards admission. *See id.* To the extent there is a concern that the jury may use the evidence for an improper purpose, this concern can be mitigated with a limiting instruction to the jury. *See, e.g., United States v. Straker,* 800 F.3d 570, 593 (D.C. Cir. 2015) ("Juries are presumed to follow instructions that caution them to draw only permissible inferences from Rule 404(b) evidence."); *United States v. Moore*, 651 F.3d 30, 96 (D.C. Cir. 2011) (finding that limiting instructions to a jury can cure any risk of prejudice). As such, this Court should admit evidence of Defendant's prior conviction.[6]

### b. The Court Should Allow the Government to Cross Examine Defendant and David Warrington Regarding the Telegraph Scheme.

Finally, the Court should permit the government to cross-examine Defendant, should he take the stand, and defense witness David Warrington regarding the Telegraph scheme, as described in the article and corroborated by email records seized from Defendant's email account. As laid out in the government's motions *in limine*, an undercover reporter posing as the agent of a Chinese benefactor, got in touch with an individual associated with Great America PAC under the auspices of wanting to donate $2 million to a super PAC. *See* Telegraph Article, Ex. A. Defendant then reached out to the reporter to follow up on the inquiry and discuss and arrange the contribution. *Id.* According to the article, Defendant worked out a method to hide that contribution – namely that he would provide the individual he believed was an agent of a foreign national with

---

[6] Any concerns that Defendant may have regarding "the political nature of the pardon process," *see* ECF No. 35, at 4, are properly addressed in voir dire, and not by exclusion of relevant and admissible evidence.

an invoice for consulting services for his company Titan Strategies. *Id.* According to the article, Defendant reached out to the reporter after the reporter made contact with Eric Beach, who at the time was running the super PAC. *Id.* According to the article, the undercover reporter met in person with Defendant on October 13, 2016 in New York. *Id.* At the time Defendant was on house arrest in Kentucky, and did not have permission to travel to New York. *See* Ex. B (Probation Report, Southern District of Iowa).

Emails seized in the course of the investigation corroborate this timeline of events: in early October 2016, Defendant reached out to the undercover reporter and said that Eric Beach asked him to reach out, and they then set up a time to talk on the phone. *See* Ex. C (Benton Email Exchange With Undercover Reporter). Emails seized from Defendant's email account reflect that Defendant met up with the undercover reporter at the St. Regis hotel (a hotel in New York) on October 13, 2016. *See* Ex. D (Benton Emails Exchanged with Undercover Reporter Arranging Meeting). The day after the meeting, Defendant sent the undercover reporter an email attaching a "consulting agreement" and an invoice for $2 million for "Public Affairs Consulting, Data Analytics." *See* Ex. E (Email to Undercover Reporter Attaching Consulting Agreement and Invoice). According to the article, Defendant told the reporter that the point of these documents was to hide the true purpose of the funds. *See* Ex. A. Thus, taken together, it appears that just after Defendant created the invoice in the instant case, Defendant was creating another invoice to disguise the true purpose of funds that he believed originated from a Chinese foreign national.

"[O]ther crimes" evidence may properly be introduced to impeach a witness." *United States v. McGill*, 815 F.3d 846, 884 (D.C. Cir. 2016). Defendant's creation of another false invoice, to hide the true purpose of the funds, serves to impeach any testimony by Defendant that he did not know his conduct was unlawful or that he believed that a lawyer had sanctioned this

method of getting money into United States political elections. It will also undercut any claim that this was an accident or a mistake by Defendant. "Counsel…need only have a reasonable basis for asking questions on cross-examination which tend to incriminate or degrade the witness, and the general rule in such situations is that the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the question relates." *United States v. Whitmore*, 359 F.3d 609, 621–22 (D.C. Cir. 2004) (internal quotations omitted). Here the Telegraph article plus the emails found in Defendant's email account provide the reasonable basis for the requested cross-examination. *See id.*

In addition, in traveling to New York to meet with the undercover reporter, Defendant actually lied to his Probation Officer in his prior case. *See* Ex. B. Defendant told that Probation Officer that he was attending a meeting in Washington, D.C. and received permission to attend that meeting. *Id.* Instead (or in addition) he visited New York. In other words, in addition to creating a false invoice, Defendant also sought to hide the meeting with the undercover reporter from the court while he was under his sentence for home confinement, which also suggests that Defendant knew that his behavior was unlawful. But more importantly, Defendant's lack of candor with Probation and the court goes directly to his veracity and is the proper subject of cross-examination. *See* Fed. R. Evid. 608 (permitting cross-examination of specific instances of conduct if they are probative of a witness's character for untruthfulness).

Defendant also argues that the FEC did not assess any penalties for the conduct and that it is unclear if Defendant broke the law. ECF No. 35, at 5. As is obvious from the Telegraph article, the supposed Chinese money was never transferred, and the scheme never consummated, because the article came out exposing the whole arrangement. The government did not charge Defendant criminally with the Telegraph scheme. But the fact that Defendant was not charged or the FEC

did not proceed against Defendant does not change the material part of the event for present purposes, namely that Defendant yet again created a false invoice to hide the purpose of funds that were to be transferred to his business and then used for a political contribution, and thus that his actions in the present case were more likely to be intentional and willful efforts reflecting a consistent modus operandi, and less likely to be the result of a mistake or accident. Moreover, the key parts of the story are corroborated by Defendant's email.

Defendant further claims that "there is insufficient reporting on Benton's refusal to do what was alleged until counsel performed a final vetting of the transaction." ECF No. 35, at 4. According to the article, Defendant claimed to have checked with an attorney regarding the scheme and claimed that the attorney was giving the scheme final vetting. For this very reason cross-examination of Defendant's apparent lawyer for these issues, David Warrington, regarding the events described in the Telegraph article is appropriate. To the extent Defendant was consulting with Mr. Warrington about this separate scheme, also involving a false invoice and foreign money, that occurred within weeks of his supposed previous consultation, that would appear to be relevant to his advice of counsel defense, and a fair subject of cross examination of Mr. Warrington. To the extent he was not, it suggests that Defendant was not providing full information to Mr. Warrington and would serve to undercut Defendant's advice of counsel defense.

The Court should reject the rest of Defendant's arguments regarding the Telegraph article. Defendant complains that in its notice the government stated that Defendant "solicited" the contribution. Although the undercover reporter reached out to Eric Beach initially regarding the contribution, it seems clear (as corroborated by Defendant's emails) that Defendant affirmatively reached out to the undercover reporter to pick up the conversation and consummate the arrangement. The Court should also reject Defendant's claim that any discussion of the Telegraph

11

article will devolve into a mini-trial: the government does not intend to admit evidence of the Telegraph scheme in its case in chief and solely intends to use the scheme for the narrow purposes of cross-examination discussed above. A mini-trial on the numerous topics raised by Defendant would therefore be inappropriate and not relevant to the purpose of the testimony or this trial. *See* Fed. R. Evid. 402 (irrelevant evidence not admissible). Moreover, cross-examining the Defendant on his creation of another false invoice or Mr. Warrington on any contact he had with Defendant regarding the Telegraph scheme will not devolve into a mini-trial regarding whether Defendant committed another crime, because questions regarding whether Defendant acted in similar fashion on a prior occasion go directly to Defendant's intent, knowledge, and absence of mistake or accident, as well as his truthfulness or untruthfulness as a witness. Proof that Defendant's prior actions with respect to the Telegraph article also constituted a criminal offense is not necessary to make this inference.

For the limited purpose for which the government intends to offer and use this evidence, it is highly probative of matters material to the case – namely Defendant's knowledge, willfulness, modus operandi, and veracity, and its probative value is not substantially outweighed by unfair prejudice. *See Cassell*, 292 F.3d at 796; Fed. R. Evid. 403; Fed. R. Evid. 404(b).

### III. Conclusion

The government respectfully requests that the Court deny Defendant's motions.

//
//
//
//

        Respectfully submitted,

        Corey R. Amundson
        Chief
        Public Integrity Section

By: */s/ Michelle L. Wasserman*
        Michelle L. Wasserman
        Special Assistant United States Attorney
        United States Attorney's Office for the
        District of Columbia

        Rebecca G. Ross
        Michelle K. Parikh
        Trial Attorneys
        Public Integrity Section
        Criminal Division
        U.S. Department of Justice

## **CERTIFICATE OF SERVICE**

I hereby certify that this motion was filed by ECF on August 19, 2022, and thereby served on defense counsel.

        */s/ Michelle L. Wasserman*
        Michelle L. Wasserman
        Special Assistant United States Attorney